Good morning, Your Honors. My name is Michael Donahoe. Please, the Court, I'm here on behalf of Mr. Crawford. We bring two issues, but really only want to discuss one. The first issue we consider resolved, I think, based on the correspondence that was sent to the Court regarding the racial issue as an element. We figure that's a dead letter and would formally Thank you for notifying the Court of that. You're talking about the resolve by that Byrd case, the companion case? That's what we wanted to notify the Court about and stand on that analysis and we'll withdraw it. But we do want to discuss for a few minutes, if you please, the Court, the missing witness and continuance issue. In the ordinary course of investigation here, it was determined by the defense that Mr. Dusty Bull should be called as a witness. Procedures were followed. We filed the Rule 17 request, got the subpoena issued. Had it properly served, I think that's reflected in the record, and Mr. Dusty Bull did not appear. When it came time for us to close our case, that is the defense, Judge Haddon requested that we call the next witness. We tried to explain that he wasn't available and were essentially forced to rest our case. On the heels of that, the very next morning, wanting to clarify the record further, we asked for some more time in the way of a continuance to see if Mr. Dusty Bull couldn't be located so he could be summoned and brought to court. And that request was denied as well. Was that fact, you know, argued to the jury? In a manner of speaking, Mr. Dusty Bull was touched on. I think probably what we're looking to is did someone get up and say, you know, where's Dusty Bull? They should have called him. You know, if the defendant's story were really true, they should have brought in Dusty Bull to corroborate that. No. Well, actually, in some ways, that happened in an oblique sort of way. I think Mr. Crawford, when he testified, he tried to lay blame at the feet of Mr. Dusty Bull. But for reasons that were apparent in the cases, at least that were discussed in the continuance motion, we felt, and I in particular felt as counsel, that without a direct authorization from the court to argue that point to the jury, I shouldn't do that. That was the purpose in part of the request for the continuance and the missing witness instruction was to let the judge know that we wanted to go in that direction. And we never got any such authorization from the court. Without the instruction as some kind of direction to the jury as to what they might do. What was the instruction supposed to tell you? If that instruction had been given, what was the jury supposed to do with it? Anything they wanted. Anything they wanted. Right. So it was just sort of a comment on the state of affairs by the court. I don't know that it was a comment on the evidence, but it was a comment on the condition of the case, Your Honor. The jury knew that Dusty Bull had had some, that the piece, what was it, a jacket or something, the van? Correct. They were aware of that. They were. They were aware of that. Made several references to Dusty Bull's role in this during the closing argument. We did. Absolutely. I would not deny that. But I'd also point out that in the opening statement, we listed witnesses, and Mr. Dusty Bull was one of those, and told the jury that they would hear from him. And Judge Haddon didn't even have, like, some sort of Fifth Amendment right? Well, he did. And Judge Haddon, in our view, speculated that he would invoke that. Based on the interviews that we did. Well, but you kind of took a risk there by saying you were going to call someone that you don't even really know if you could call them. Well. Hadn't found him, number one. And then it would seem to me that, you know, what he was going to say, you know, someone like this is always, you never know that they're going to say what you think that they're going to say. Because there's, and he would certainly seem to have Fifth Amendment rights not to come in and take all the blame from your client. Well. And if he asserted them. Respectfully, Your Honor, we did find him. He was interviewed twice and he was properly served and that return of service appears in the record in this case. No, but by the time, say, if he were available, by the time he got into the courtroom, he'd probably have a lawyer appointed for him. Well. And part of the, you know, part of the showing you have to make, for instance, on prejudice from the denial that continues with that, that he would have testified. Well, but there are a whole set of problems. You can't make that showing. There, Your Honor, if, please, Your Honor, there are a whole set of problems that we were speculating may have occurred. Likewise, I can inform the Court that based on the interviews, assuming he had invoked his Fifth Amendment privilege, maybe based on things that he would have said, he could have been confronted in a manner that made him look bad. Well, you see. And the meaner evidence itself, I mean, for the jury to evaluate how the man appears on the stand. But let me get back to the more basic problem. You know, as I understand the missing witness cases, you'd be entitled to that instruction if, you know, from the circumstance, it would appear that if the witness came in, he would give testimony against you. In other words, so that you can say, well, it's not my fault he's not here. But that's not the circumstance here at all, is it? Well, it wasn't. So, in other words, you want the jury to draw a favorable inference as, well, this witness is not here, but believe me, if he were here, he would testify in our favor. That's what you want. And I don't think that's a proper circumstance for missing witness instruction, is it? But, well, that's probably an accurate way to say that, Your Honor. But these are very peculiar circumstances in that we're trying to affix blame or assign blame as between two individuals, both of whom we have some evidence are involved in the crime. And we have some evidence that they are involved in this incident. That's kind of sui generis, I think, in this whole mix here. So to categorically state the rule, yes, Your Honor, I would agree with that. But I think this is just a little bit different. It's just a little bit peculiar. And on that score, if the missing witness instruction turns out to be a problem, we have the alternative request for the continuance. There really was no reason not to go ahead and grant that relief. Well, I think that the reason, if I can play the devil's advocate here, is it was made in the middle of trial and not before the trial started. Am I correct on that from a context standpoint? That's correct. And as the trial was commencing, apparently some concern was raised about his appearance. But things were set in motion designed to find him. I think Judge Haddon talks about that in his colloquy and says that he set about issuing the arrest warrant and so on. So we were sort of waiting to see if that was going to play out, hoping, Browning's not a very big place. And the FBI's actually pretty good up there. The agents are known. And we figured he might be able to be picked up and just summarily brought down. But when, after we were forced to rest our case, that very next morning early, we filed that motion for continuance. So given the style of the relief requested here, I understand that there could be misgivings about giving the missing witness instruction. But in any case, I think if that turns out to be a big problem, we could have taken a couple of extra days to find Mr. Dusty Bolt to bring him down to put him on the witness stand. Thank you, Your Honor. Thank you. May it please the court. Good morning, counsel. My name is James E. Sikora. I was not trial counsel in this matter. Laurie Sook was. She's involved in trial right now. And she sends her greetings and apologies that she is not here today. Perhaps, like Your Honors, I had the opportunity to sit and read the cold record and make my analysis of the situation. And I think there are some very horrified, key factual issues in this particular case. If you look at the trial brief, which is on page 64 of the excerpts of record, Ms. Sook filed the trial brief saying, we believe that Dusty Bolt is going to testify and inculpate the defendant, not exculpate him. So at the very get-go, going to this trial, we had every belief that he was going to testify on our behalf, inculpating the defendant. Well, apparently, both sides were trying to find him, is that right? No question, Your Honor. No question. We both served him. And the record is clear that he was unavailable to both of the parties. However, when we get into the situation, counsel indicates to this court that he was forced to rest. If you actually look at the transcript of 325, at the very close of the case, at the close of the defense case, Mr. Donahoe stands up and calls in front of the jury, Dusty Bolt, said he's unavailable. And Judge Haddon inquires, does that mean you rest? He said, just a minute. He talks to the defendant, said, no, the defendant's going to take the stand. So the defendant now takes the stand, knowing that Bolt is not available, and he implicates the missing witness. This is the record in which Judge Haddon is then left with on a late Monday night. The case is rested. We have no rebuttal from the United States. And the next morning, they're going to meet early for settlement of instructions. And Mr. Donahoe files a motion to continue after the evidence, after he's rested. So Judge Haddon, in the brief moments he has of that morning before final argument, does a complete factual analysis of the missing witness instruction. He goes not only general instruction, he goes line by line. He says it's inappropriate, it's inappropriate comment, analogizes and looks at every line and makes an appropriate record. Then he gets to the continuance, and he sets the record. We had an arrest warrant. We had the marshal. He goes into the extraordinary expenses they've been spending and detailing and saying, I'm asked to continue this case at the close of the evidence after you've all rested for an indefinite amount of time. What am I supposed to do when we have jurors coming from all over western Montana? Send them home and put them on hold until we find them? Clearly, there was no abuse of discretion by Judge Haddon. He protected the record impeccably. The burden was on the defendant from the get-go to establish that Dusty Bull would have provided favorable testimony on his behalf. The best that I can see in reading the record of the motion to continue is there's pure speculation on counsel's part. We, the United States, told the court, based upon our interviews and our trial brief, he's going to implicate Crawford. Mr. Donahoe said it's, we need to flesh that out. We need to see the demeanor of this person. Actually, he wanted to have his cake and eat it, too. The defendant took a stance that I didn't do it, he was Bull. We didn't have the opportunity to put Dusty Bull on, say no. The coat in which I was caught with the FBI, I had purchased it from the defendant. Your Honors, it's very clear, we believe from the record in looking at it, including the very meticulous doggedness of Judge Haddon in going over those instructions and testifying at a letter, and analyzing in three full pages of transcripts why the continuance is not necessary. That the defendant does not carry the burden, Your Honors. And I'm willing to answer any questions. Once again, Ms. Zook, I apologize for not appearing. If you missed the opportunity. Do I have any other questions? I have regards. I'm sorry, Your Honor. I have regards. Thank you. Any other questions, Your Honor? Thank you. Thank you. Your Honor, so I just did, really quickly, want to clarify. Mr. Crawford was called before the Dusty Bull business. And when Judge Haddon asked about the rest, whether we rested our case, that's at 335 in the excerpt of the record. And Mr. Dusty Bull is not mentioned. I indicate that there's one more witness, and I don't do so by name. And I don't suggest in front of the jury that he has not appeared. And in fact, I don't think there was any way for the jury to know that, except maybe by their own speculation. Thank you. You mentioned in your opening argument, or did you do an opening argument? I did. I mentioned Mr. Dusty Bull in the opening statement. What did you say he would say? I didn't say he would say anything. It was a summary of the evidence, and I listed the witnesses that would come in, on behalf of the defense, and discuss those issues. Mr. Dusty Bull was in that list. Thank you. Thank you. The mattel stands admitted. Thank you. Next case.
judges: Tashima, Paez, Callahan